UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ARSENIO QUEJA CADIZ and<br>FLORA BELARDO CADIZ,<br><br>             Debtors. | Case No. 09-01903<br>Chapter 13<br><br>Re: Docket No. 13, 64 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

        An evidentiary hearing on confirmation of the chapter 13 plan was held on November 30, 2010. Eduardo O. Zabanal, Esq. represented the debtors, and Jerrold K. Guben, Esq. and Elmira K. L. Tsang, Esq. represented creditors William C. Lao and Cherry Ann P. Lao.

Based on the evidence, the court makes the following

### FINDINGS OF FACT:

    1.    Arsenio Queja Cadiz and Flora Belardo Cadiz own the real property located at 94-276 Pupukoae Street, Waipahu, Hawaii 96797 (the "Property").

    2.    The Cadiz's interest in the Property is subject to two mortgages. The first mortgage, which secures a debt in the original principal amount of $698,000, is currently held by LPP Mortgage, Ltd. ("LPP"). The second mortgage, held by

William C. Lao and Cherry Ann P. Lao, secures a debt in the original principal amount of $60,000.

3.	Mr. and Mrs. Cadiz commenced this chapter 13 case on August 20, 2009. Their fifth amended chapter 13 plan proposes to maintain the current payments due and cure the defaults on the first mortgage and to "strip off" Mr. and Mrs. Lao's second mortgage.

4.	Mr. and Mrs. Cadiz argue that the Lao's second mortgage is entirely unsecured because the Property is worth less than the balance secured by the first mortgage. Mr. and Mrs. Lao object to confirmation of the plan, contending that the Property is worth more that the balance secured by the first mortgage and that the second mortgage must be treated as fully secured. The standing chapter 13 trustee also objected to confirmation; apart from some mathematical discrepancies within the plan, which can be corrected in the confirmation order, his objections were resolved. There are no other objections to confirmation.

5.	The outcome of this dispute turns on the value of the Property and the amount secured by the first mortgage.

6.	The Property is improved with a two story house, containing ten bedrooms and five bathrooms. Mr. and Mrs. Cadiz and their family live on the second floor of the house. On the ground floor, they operate a licensed adult

U.S. Bankruptcy Court - Hawaii   #09-01903   Dkt # 86   Filed 12/01/10   Page 2 of 7

residential care home, housing up to five patients, in three bedrooms. To accommodate wheelchair-bound patients, the ground floor has wide doors and hallways and handicapped accessible bathrooms. The care home business produced annual gross revenues of about $55,000 in 2007 and 2008, and about $55,000 in the first eight months of 2009. The care home revenues vary, depending upon the number of patients, whether the patient's charges are covered by the government or by a private source ("private" patients pay more than government paid patients), and the level of care which the patients require.

7. The replacement value of Mr. and Mrs. Cadiz's interest in the Property, as of the date of the petition and today, is not more than $750,000. (By "replacement value," I mean what it would cost Mr. and Mrs. Cadiz to obtain a like asset for the same proposed use or, stated slightly differently, what price a willing buyer in the business, trade, or situation of Mr. and Mrs. Cadiz would pay a willing seller to acquire property of like age and condition.)

a. Remarkably, the appraiser hired by the creditors opined that the Property has a <u>lower</u> value than the appraiser retained by the debtors. The debtors' appraiser reported that the market value of the Property is $750,000. The

creditors' appraiser arrived at a market value of $715,000.[1]  The appraisers define "market value" in a way that is not materially different from the definition of the "replacement value" stated above.

          b.      The Laos contend that both appraisals understate the replacement value of the Property because they disregard the income generated by the debtors' care home business in the Property.  The debtors' appraiser was aware of the care home operation but explained that he did not adjust the value of the Property to account for its existence because he did not believe that the residential zoning applicable to the Property permitted a care home operation and because the income of a small care home is inherently unstable.  The creditors' appraiser was not deposed and did not testify at trial, so his reasons for not considering the care home income are not stated, but he inspected the interior of the house and at least had an opportunity to notice the specialized improvements for care home use.  If he thought that use justified a higher value, he presumably would have adjusted his opinion accordingly.

---

[1] This might be a typographical error.  According to the creditors' appraiser's report, the sales comparison approach indicated a value of $750,000, the cost approach indicated a value of $752,000, and the income approach was not applicable.  The report does not explain why the appraiser's final value conclusion was significantly lower than the value indicated by both of the approaches he employed.  Even if this was an error, there is no reason to think that the creditor's appraiser would have chosen a value of more than $750,000, because his report says that the sales comparison approach "is the most appropriate approach."

4

8. The amount secured by the first mortgage on the Property, as of the date of the Petition, was $751,272.00, and is higher than that today because the debtors have not made all of their postpetition payments.

    a. LPP filed a proof of claim asserting a claim in that amount. To date, no one has objected to the claim.

    b. In response to interrogatories, LPP stated that it does not have possession of the loan payment history prior to September 2007. The loan was made in December 2006. Although this lacuna is troubling, there is no evidence that LPP's calculation of the loan balance is wrong.

    c. Mr. and Mrs. Lao suggest that LPP may have included excessive and unauthorized fees and charges in the loan balance. There is no evidence, however, that LPP has done so, and LPP's proof of claim indicates that the only added charges were late fees.

Based on the foregoing findings of fact, the court makes the following

## CONCLUSIONS OF LAW:

1. The court has jurisdiction over this chapter 13 case. The confirmation of a chapter 13 plan arises under title 11. Venue is proper.

2. A chapter 13 plan may not modify a claim secured only by a security interest in real property that is the debtor's principal residence (other than by

curing any default within a reasonable time). 11 U.S.C. § 1322(b)(2), (5) (2006). If a junior lien is wholly unsecured, however (meaning that the value of the collateral is less than the amount secured by senior liens), the plan may treat the claim as unsecured and avoid the junior lien on the collateral. Zimmer v. PSB Lending Corporation (In re Zimmer), 313 F.3d 1220, 1227 (9th Cir. 2002).

3. Where a chapter 13 debtor proposes to retain encumbered property, the property's value for purposes of plan confirmation is "the cost the debtor would incur to obtain a like asset for the same proposed use," Associates Comm'l Corp. v. Rash, 520 U.S. 953, 965 (1997), or, stated more comprehensively, "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition . . . ." Id. at 959 n.2.

4. Applying this standard, the value of the Property, as of the petition date and today, was not more than $750,000.00.

5. If a creditor files a proper and timely proof of claim, the claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a) (2006). The proof of claim constitutes prima facie evidence of the validity and amount of the claim. Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000); see also Fed. R. Bankr. P. 3001(f), 3007. The objecting party bears the burden of overcoming the presumption that the claim is allowable. Id. ("To defeat

U.S. Bankruptcy Court - Hawaii   #09-01903   Dkt # 86   Filed 12/01/10   Page 6 of 7

the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves'") (quoting Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991)).

6. LPP filed a timely and proper proof of claim in the amount of $751,272.00 as of the petition date. No one has objected to the claim. Therefore, the claim is deemed allowed.

7. Even overlooking the fact that no formal objection to the claim has been filed, the evidence and arguments offered by the Laos are insufficient to overcome the presumption of validity. There is no evidence that the claim includes any improper or unauthorized charges or that the claim amount is incorrect.

8. All other requirements for confirmation of the plan are satisfied.

Based on the foregoing findings of fact and conclusions of law, the standing chapter 13 trustee is directed to submit orders (1) granting the debtors' motion to value the Property at $750,000 and allowing the Laos' secured claim at zero and (2) confirming the debtor's amended plan.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 12/01/2010

7